25952. SOUTHERN RAILWAY COMPANY *v.* McCRARY, administrator.

DECIDED MARCH 4, 1937.

*Maddox, Matthews & Owens,* for plaintiff in error.
*Maddox & Griffin,* contra.

FELTON, J. Hugh McCrary, as administrator of the estate of

Albert Hymon, brought suit against the Southern Railway Company for damages on account of the homicide of the deceased, alleged to have been caused by the wanton negligence of an engineer on the defendant's train. The suit was brought under the Code, § 105-1309, for the benefit of Estelle Bennet, a first cousin of the deceased, alleging that the deceased contributed to her support the sum of $20 per month, and that she was dependent on the deceased to that extent. The suit was in two counts, both charging wanton negligence. The counts were indentical, except that the first count also included allegations with reference to a violation of a speed ordinance of the City of Rome. The defendant filed demurrers to the declaration, those necessary to be mentioned being: that two counts charging wanton negligence were contrary to good pleading, and that the plaintiff should be required to elect upon which he would proceed; that the charge of simple negligence as contained in the first count is irrelevant, immaterial, and in no way pertinent, and that a violation of the ordinance did not proximately cause or contribute to the death of the decedent; that the first count is duplicitous in that it contains charges of wanton and simple negligence; and that, eliminating the charges of simple negligence from the first count, both counts are identical. The case was submitted to a jury, which returned a verdict for the plaintiff. Exception was taken to the overruling of a motion for new trial, and to the overruling of the demurrers.

■ This was a suit for damages for wilful and wanton killing of the deceased, who was a trespasser. It is conceivable that evidence of the violation of the speed ordinance might be relevant on a question of whether the engineer was wantonly negligent, as in the case of *Georgia Railroad* v. *Williams,* 74 *Ga.* 730, where it was so held. However, under the allegations of the first count of the petition, we are unable to see how the violation of the ordinance was relevant to the violation of the duty owed to the deceased, under the facts alleged in the first count. The deceased was a trespasser. The suit is not based on the failure of the engineer to anticipate the presence of the deceased or others on the tracks; it is not based on his failure to sound an alarm and give warning after the discovery of the deceased on the tracks; it is not based on negligence growing solely out of the violation of the speed ordinance. In all of the above instances the suit would have

been for damages based on simple negligence. In the first two instances the defendant might be held liable to a trespasser for simple negligence. In the other instance it would not. Since the suit was not for simple negligence on account of the violation of the speed ordinance, and since no recovery could be had by a trespasser for a violation of such an ordinance, it becomes necessary to determine just what the violation of the ordinance had to do with the homicide, and whether, under the facts alleged in the petition, its violation is pertinent to the question ultimately to be decided, and whether its violation was the proximate cause of the homicide.

The first count of the petition alleges that the engineer saw the deceased on the track in a helpless condition, four hundred yards before the engine reached him, that the train was running forty miles an hour, and that by the exercise of ordinary care the engineer could have stopped the train before it ran over and killed the deceased. Under our view of the case, these allegations make and circumscribe the plaintiff's case as a suit for the violation of a specific duty owed to the deceased under the special circumstances alleged. The allegations limit the liability to the breach of duty alleged. The suit is for a breach of a high, primary, and urgent duty to avoid injury to a helpless human being. It was a higher duty than was owed to persons who might have been on a crossing. It was a higher duty than was owed to persons not on a crossing but who might have been expected on the tracks. It was a higher duty than was owed to a trespasser on the tracks, not in a helpless condition. If the engineer saw the deceased on the tracks in a helpless condition, and could have stopped by exercising ordinary care, the jury might have been authorized to find him guilty of wanton negligence. The question, however, is, what did the violation of the ordinance have to do with the homicide? It is contended that if the ordinance had not been violated the deceased would not have been killed. That may be true; but it is also true that if the engineer had done what the petition alleges could have been done, the deceased would not have been killed. The engineer could not have prevented the homicide but once. How should he have done it? Should he have done it by performing a special, sacred duty he owed a helpless creature? Or should he have done it largely by performing a duty he owed to imaginary

persons not on the crossing or tracks? Or should he have prevented the homicide by performing both duties? Our answer is that if he could have done so, as alleged, he should have prevented the homicide by the exercise of the special duty he owed the deceased under the special circumstances of the case, and the fact that he could have done so by performing a duty he owed to others, but not to the deceased, is an issue foreign to the case.

We can conceive of a situation in which the jury might have been authorized to consider the violation of the speed ordinance on the general question of negligence. If it had been alleged that the engineer saw the deceased on the track four hundred yards away, and did not then know and appreciate the fact that he was in a helpless condition, and that he could not rely upon his removing himself from danger, and later did realize his helpless condition but realized it too late to stop his train in view of its excessive speed, but could have stopped if he had been obeying the speed ordinance, the violation of the ordinance would have been a proper subject of consideration by the jury on the general question of the amount of the negligence of the engineer; but under the allegations of the count under consideration the train could have been stopped without reference to the ordinance, and therefore its violation is irrelevant in the present state of the pleadings. The first count is duplicitous in setting forth the charge of simple negligence. It was therefore error to overrule the demurrer to the petition and first count setting forth this defect. *Holland* v. *Sparks,* 92 *Ga.* 753 (18 S. E. 990); *Huckabee* v. *Grace,* 48 *Ga. App.* 629 (173 S. E. 744).

■ As to the question whether the administrator of the deceased could recover for the benefit of a first cousin of the deceased, under the Supreme Court's construction of the act of October 27, 1887, in *Clay* v. *Central Railroad Co.,* supra, both dependency and actual contribution to support are prerequisite to the right to recover. While the wording of the act (Ga. L. 1924, p. 60) might on first sight seem to indicate that either dependency or contribution to support might sustain the action, it is hardly reasonable to suppose that the legislature intended to furnish a broader basis for a right of action to a more distant relative than it had provided for a mother or a father; and it is certain that the amount of recovery in such a case as this can not be

computed on a basis which is broader than the basis which forms the very right to sue. If a father or mother can not sue for the homicide of a son unless there is dependency *and* a contribution to support, certainly it would be ridiculous to hold that a more distant relative could sue where just one or the other of the two factors existed. Accordingly, the court erred in charging the jury that the plaintiff could recover if the relative was dependent on the deceased, *or* the deceased contributed to her support. The ground of the motion for new trial raising this point was well taken, and it was error to overrule. the motion for new trial.

*Judgment reversed. Stephens, P. J., concurs. Sutton, J., concurs in the judgment.*